You are Ms. Willem and Mr. Tang, right? Ready to proceed? We're on an expedited schedule. I'm with the Office of the State Appellate Defender, and I represent the defendant, Apolline Lionel Martin. Lionel Martin was a passenger in a car driven by Cedric Senegal. They were traveling northbound on I-57 from Texas to Indianapolis. Senegal testified that he pulled over to use the bathroom. He noticed the police car was following them for the first time as he pulled up to the gas pump at a convenience store. All parties agreed that the lights on the police car were never activated. However, the trooper Goines said he saw the car and thought it was being evasive when it pulled off the interstate. He followed the car to the gas station, and when the men got out of the car, he ordered them back inside. Goines asked the driver of Senegal what they were doing and was told that the men had to go to the bathroom and were filling up the car with gas. Goines patted Senegal down before he allowed him to go into the restroom. He obtained Senegal's driver's license, and he also asked if he could look at the gas gauge to confirm his story. Senegal gave the trooper permission to look at the gas gauge. Because the windows were heavily tinted, Trooper Goines had to open the driver's door to see the gas gauge. When he opened the driver's door, he noticed a shrink-wrapped package on the driver's seat, which he thought resembled those he had seen in prior drug cases. At that point, this traffic stop became an investigative stop. Trooper Goines was sure the package had contained narcotics of some sort, even though he couldn't smell or see the contents. He thought the men were acting nervous, especially Senegal the driver, so he called for backup. While he was waiting, he inspected Senegal's driver's license and Lionel Martin's passport. When Senegal returned from the bathroom, he was arrested for speeding and for going through a stop sign. He was placed in a squad car. When backup arrived, the officer patted Martin down and allowed him to use the restroom also. And then when a second car arrived, Martin was also handcuffed and placed in a squad car. Goines called dispatch and ran a history check on both men, learning that they had criminal history of cocaine trafficking. He called a sergeant to the scene. He also began to search Senegal's car based on a suspicion of narcotics and on the information that the men had priorly trafficked drugs. When the sergeant arrived, he agreed with Trooper Goines that the package probably contained narcotics. He pierced the package with a pocket knife, which revealed marijuana. Martin Senegal was then arrested for possession of cannabis. The trial court issued a written order in this case where it made many findings. Is that the point, that your client was arrested was after they discovered what was in the package? Your Honor, it's... I mean, it may be critical, but when was he handcuffed? He was handcuffed after the package was found before it was actually pierced. And it's unclear in the record... So when was he under arrest? I mean, you said he was arrested after the package was... He... They never actually answered the question of when he was arrested in this record, which is an interesting question. It's clear when Trooper Goines was asked on the stand when was Cedric Senegal arrested and for what was he arrested. He was arrested prior to the opening of the package and for going through the stop sign and speeding. What's your position on when he's in custody? Obviously, Martin is in custody the minute he's cuffed and placed in the squad car. When's that? Prior to the piercing of the package, but after it has been seen. So it's before the second officer gets on the scene? As the second officer gets on the scene, Martin is cuffed. There's also then another officer who arrives, the sergeant. It's the sergeant that pierces the package. Okay. Thank you. The trial court found that the officers had a reasonable or typical suspicion that the bundle contained narcotics and that the package was in plain view. The court found that given Senegal's suspicious driving and his evasive responses, that added to Goines' reasonable suspicion that the package had to contain narcotics. The court denied the motion to suppress based on an exception to Gant, finding that if there's probable cause to believe a vehicle contains evidence of criminal activity, you can go ahead and search it. I believe that this exception to Arizona and Gant does not authorize the opening and searching of the wrapped package here because it's very clear that although there are exceptions, the United States Supreme Court has narrowed the scope of vehicle searches incident to arrest, and they hold that once a suspect is handcuffed and secured in a separate place, as both Senegal and Martin were in this case, the police cannot justify a search of that vehicle as a search incident to the arrest. How does your client, as a passenger, have standing to challenge the search of the driver and the owner of the vehicle? Your Honor, there are different factors that we have to look at to determine whether my client has standing. My client was legitimately within the car. There's nothing to say that he was not a legitimate passenger in that car. He was on a cross-country trip, and as such, he does develop an expectation of privacy for the duration of that trip. The package here was found in an area that's within his control. It's not like some of the other cases. It's not like McCoy, for example, where the package is on the engine compartment. Presumably, this was under the driver's bottom, right? Yes. The driver was sitting on it. It seems like the driver may have been sitting on it or had it behind his back, Your Honor. So in that case, it is an object that is within the area of control of a passenger in a car, and as such, I believe that Lionel Martin does have standing to contest that. Under Vant, police officers are only authorized to search a vehicle incident to an occupant's arrest if it's reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. Here, the crime of arrest is simply that Senegal was speeding and disobeyed a stop sign. The arrest is completely unrelated to any suspected drug activity and does not support a search of that package. What about the plain view of this item? Your Honor, I would argue that he did not have probable cause to open the package under the plain view doctrine because it's not a distinctive enough package to compel the conclusion that it contained drugs. You can only open a package under that if the incriminating nature of the evidence is immediately apparent. And here, if the police have to do more than simply view an object before they can determine that there's evidence of unlawful activity, they must have probable cause. Here, they had to pierce that package with a pocketknife, and so in order to do so, they would have to have probable cause, which is a higher standard than the reasonable suspicion that was found by the trial court here. The trial court repeatedly found that these officers may have had reasonable suspicion, but the trial court never found... So, do you think, I mean, you attached a picture to your briefcase that it could have been a seat cushion? It could have been a seat cushion. I... Your Honor, I... What else? I do fiber arts, so I order a lot of fiber and yarn, and it always comes to my home in Ziploc bags. They press all the air out, and then they wrap them very tightly so air and moisture cannot get in. When I order... Yarn? Yarn and fleece... These two guys knitters or something? Your Honor, there's no evidence of that. I'm just saying there are legitimate reasons to have an opaque shrink-wrap bundle like that, and it does not necessarily compel the conclusion that it must contain drugs. If you look at our... At the Illinois case of People v. Kenney from the 1st District, there you had an opaque package 7 inches by 4 inches on the floor in plain view, and although the defendant's hands were shaking, as the officer here said Senegal was nervous and Martin seemed nervous, the totality of the circumstances there were not enough to provide probable cause to poke a hole to pierce that package to confirm that it contained cocaine. Did the police know that they were drug dealers prior or had drug addictions prior to them piercing the package? Are you asking in this case? Yes, Your Honor. He had received that information back at the time that Sergeant Lawrence arrived. Is that a factor that the police would normally take into consideration to establish probable cause? I believe it's a factor that they can take into consideration, but even taking that factor into consideration, the trial court here did not find that the officers had probable cause. It continually only found that they had reasonable suspicion, and I would pretend that there was no probable cause for them to conduct that sort of particularized search of this package to go into it to pierce it. In order to do that, they needed stronger proof they needed probable cause, because even if the plain view doctrine will support the seizure of an item and of a container that's believed to contain contraband, but it's that search of the contents, that opening of the container, that requires that particularized suspicion, that probable cause, that's lacking in this case. And, Your Honors, I would say that I would ask that in this case that you uphold the trial court's decision that Trooper Boynes did not have probable cause at the time of the seizure and the opening of the bundle, that the contents of the package were not in plain view, and that the motion to suppress should have been allowed. And since the State cannot prevail on remand without the evidence of the search, that my client's conviction be reversed. Thank you, Judge. Your Honors, may it please the Court. My name is Timothy James King, and I represent the people of the State of Illinois. Your Honors, in my time before this Court, I will show you why the defendant's conviction for possession of cannabis should be affirmed by this Court. Now, Your Honors, the defendant delves into the search and seizure aspect and whether or not a warrantless search was, in fact, admissible in this particular case. But as Justice Waxman, as you stated, a threshold inquiry in any case is whether a defendant has standing. And in this case, simply put, this defendant does not. As a general rule, and I quote from the United States Supreme Court case of Illinois, and I quote, Now, Your Honors, there are various factors in which a court looks to determine whether or not a passenger has standing. These factors include whether there's an accessory interest in the article within the vehicle, whether there's the ownership of the vehicle, whether the defendant actually has the authority to exclude others from that particular vehicle. In this case, every factor is absent. The defendant lacks standing to assert standing when he does not have legitimate expectation of privacy. Now, legitimate expectation of privacy has been defined with two particular elements. One, whether there is a subjective expectation of privacy on behalf of the defendant. And two, whether or not there was a justifiable circumstance that would allow for that subjective expectation to be legitimate. Here, I point this court in my brief to three particular cases, particularly this court's own decision in Mankowski, as well as Warley v. McCoy. In all three of those decisions, they held that a passenger lacked standing because they lacked possessory interest in the vehicle. They did not have ownership of the vehicle, and they did not claim possessory interest of the items within the vehicle or denied access to them. The State, by bringing this charge, counters your last argument there, doesn't it? By saying that, yes, he does have possessory interest in the items in this call. The fact that he went on trial for this or pled guilty to this does not necessarily mean that he lacks standing. Because, Your Honors, on appeal, his claim is whether or not he can attack the appellate court's decision. And it's unclear whether or not he pledged, actually, he was for a bench trial. So he had a bench trial on this, and he was prosecuted on it. But the State argued that he had a possessory interest in the drugs in the call. Your Honor, at the lower level— He had to, or he wouldn't be convicted. Your Honor, at the lower level, we would concede that point. However, on appeal, when we're looking at whether or not he can challenge that, we have to understand whether or not the appellate factors are recommended. Here, the appellate factors are simply not present. He didn't have possessory interest. He has his own admission on page 100 and 101 of the record. So regardless of whether or not he, in the State, prosecuted him, on the lower level, on the appellate level, this court is bound to follow the law. And the law, as it states, has various enumerated factors which state whether or not he, indeed, actually had standing. Here, the defendant points to one case, People v. Taylor, of whether or not he actually had standing. And People v. Taylor, again, enumerated factors which are not present here. In People v. Taylor, the defendant was a girlfriend passenger of the boyfriend driver. The defendant had ownership of various luggage and personal effects in the vehicle, and the girlfriend actually told the officers that they could not look inside of her purse, where they later found paraphernalia. All of these things are absent here. Unlike Taylor, the defendant and the co-defendant were not in a romantic relationship, as seen on page 104 of the record. Here, too, while the defendant would have this court believe that they were on a cross-country trip, the actual defendant actually said, and I quote, he was just along for the ride and, quote, didn't know quite where they were going. It's seen on page 103 of the record. The defendant had no personal belongings in the vehicle. In fact, the only belongings in the vehicle were an empty duffel bag and some pair of work clothes from the co-defendant in this case, in addition to the package, as you can find on page 103 of the record. Therefore, there is nothing as far as the appellate factors to indicate that the defendant actually had standing in this case as a passenger. Now, Justice Boehner, as you mentioned, there was a prosecution on the lower level, and so doesn't that indicate whether or not there was standing? Well, if this court were to find that there were standing, the legal conclusions under the plain view doctrine still show that the conviction was still affirmed. And the reason being because under the plain view doctrine, there are various factors, again, that the court has looked at—the size, the shape, the feel of the package. And you can find this in the Praney-Burnay case, which I work on heavily within the brief. Now, the Praney-Burnay case has all those factors, and what do we have here? We have a shrink-wrapped, cellophane, opaque, 12-inch by 24-inch bundle-style package. Sure, when an officer with the amount of training that Trooper Goines had and Sergeant Lawrence, Trooper Goines stated that he had seen these packages approximately seven to eight times. Sergeant Lawrence, again, also reiterated the same, that he had decoded this approximately eight times. As you can see on pages 105, 106, 168 to 173, and 177 to 178 of the record. While neither could smell marijuana from the package, both commented that the reason they could not smell it is because it was shrink-wrapped, which is a systematic way in which the defendants mask the smell of cannabis. And you can find that on 106 and 135 of the record. Both Trooper Goines and Sergeant Lawrence testified that they are wrapped in that to detect the smell as well as be opaque so that the contents of the package aren't seen. Now, Your Honor, you may say, well, as a package, how do we know if there's not limitless possibilities? What if, as Justice Sperling alluded to, it's just a knitting needle? Here's the difference, though. I didn't say that. She said it. You said that. Your Honor, our everyday experience leads us to have deductions or inferences about certain things. Under the hood of a car is most likely an engine, and the washing machine is most likely closed. Here we have specialized training and experience from officers who both testified in substantial amounts, as you can find throughout the record and through my briefsides, which state specifically that these officers had seen every package. And specifically, Trooper Goines or Sergeant Lawrence testified, and I quote, this package was consistent with everything I've ever seen regarding narcotics, consistent with every picture I've seen, everything I've put my hands on, every area package I've ever assisted on. Record 173. As you can see, this is a package which the officers have substantially testified to that they have a specialized training experience. Surely, if an opaque, tied-off balloon, which was found in Texas v. Brown, which contained narcotics, or a one-hitter box, which the Illinois Supreme Court ruled was admissible as plain view in People v. Jones, then this type of package, a bundle-style package, meets the requirements for immediately apparent under the plain view document. While there's no particular case on point in Illinois that deals with this particular type of package as far as a 12-inch by 24-inch style, bundle-style package, there are several federal reports which show very clearly the same or similar types of package. I point this court to U.S. v. Medina, where they had a search to probable cause for brown cellophane wrapped bundles in the back of a cab. I point this court to U.S. v. Williams, a Fourth Circuit case in which they found and searched and seized five packages that were wrapped heavily in cellophane in a layer of brown material. I point this court again to Prami Vinay, which had a kilo-sized rectangular package wrapped in silver duct tape sticking out of a perfume box. I point this court yet again to United States v. Rogers, where they found black plastic bags containing marijuana in the backseat of a cab. In all of these cases, we have opaque containers that do not inherently reveal what is inside or what the contents are. But by their very nature and from specialized training and experience of these officers, they can make a reasonable inference as to what is inside that package. Moreover, as the defendant has conceded, there is criminal history on both the defendant and the co-defendant of trafficking narcotics. Surely, if a package alone wasn't enough, then their criminal history would certainly be a factor that an officer could come in to play. Moreover, it's not just Trooper Goines who made the immediate stop, but it's also Sergeant Warren who testified to the same thing as far as this package most likely contains narcotics. As the Prami Vinay court stated, and I quote, Your Honors, Some opaque containers induce assumptions about their contents. Refrigerators contain food under the hoods of cars or automobiles. These are predictions based on experience. Narcotics officers have specialized training and experience. Detective John Centrella saw a small rectangular box wrapped in silver duct tape. To the untrained eye, the object's outward appearance said nothing about its contents. To Detective Centrella, the size, shape, and wrapping of the object signified one thing, a kilogram of illegal narcotics. Do you agree that at the time of the search, the defendant was under arrest and secured with handcuffs? Your Honors, the defendant was arrested at the point when the officer put handcuffs on him, which was sometime between the time when Sergeant Warren was arrested. Trooper Warren going through the initial stop, then he discovered the narcotics. Defendant Centrella was certainly arrested at that point. The co-defendant, or the defendant here, Violent Martin, was arrested sometime unclear of the record, but sometime during that. When Sergeant Warren arrived, then he said, let's open the packages, and they checked there. Because you didn't distinguish Arizona versus Gant, I didn't see. Absolutely not, Your Honor, because Arizona-Gant has two enumerated exceptions. One is the plain view. The State feels very confident that under the plain view doctrine, the analysis speaks for itself. Whether or not it's evidence of criminal activity is another analysis, but the State chooses to forego a comment on that in its entirety because, again, we have two legitimate issues that defeat the defendant's claim. Number one – I see my time is up. May I finish? Go ahead. Number one, the standing issue, and number two, the plain view doctrine. Thank you very much. Just real quick here. The handcuffs, were they on before they opened the bag and before they checked his criminal history? I'm sorry? Did they put the handcuffs on him before they opened the package? Yes, they did. Did they do it before they ran his criminal history? It is unclear whether they did that with this defendant. Okay. With the defendant, the co-defendant, they did. But with this defendant, it's unclear. Okay. Any other questions? No. Thank you. Any rebuttal? Can you tell me – the court found that, based on the officer's experience, that the package – you could reasonably conclude, I guess, that it contained narcotics. Do we review that based on manifest way to the evidence? Is that a finding, a fact? You review the findings of fact. Under manifest way? Yes, but you can review an ultimate conclusion of law, you know. Well, what do you think that is? The court, based on his experience in drug trafficking, he believed that there was – he accepted the officer's testimony that he believed it contained narcotics. Is that a finding of fact, or is that a legal conclusion? Regardless, Your Honor, he only found that they had reasonable suspicion. The trial court here never made the conclusion that these officers had probable cause. At the time that they pierced the package, that they searched that package, the trial court clearly never found that they had probable cause to conduct that level of a search. Well, still a big deal on whether we review it on manifest way to the evidence, or we review it de novo. And it is, Your Honor, a mixed question of law and fact. It depends on how you're going to parse out the facts in this case. Okay. And as you parse out those facts, obviously, for example, when I was going through – because there were two hearings here, it does get a little bit confusing the order in which things happen. But as I put the facts from the two hearings together, it is clear that my client was handcuffed and placed in the backseat of a second squad car prior to the sergeant arriving at the scene and prior to that package being pierced. Were they consolidated in the same – did both these defendants' hearings go on at the same time? They had a joint suppression hearing issue. And I would like to return to the issue of standing. Again, I'd like to distinguish a few cases in Malankowski. The drugs were in the wheel well of the car. In McCoy, they're in the engine compartment of a rental car. And Rock has thrown a locked glove box under a seat. Here, the drugs are within the passenger area of the car. Within the passenger's reach and within his control, certainly enough for the state to have charged him and gotten conviction for possession. And I believe in this case that my client did take precautions to protect the property, and he did exhibit some control over the vehicle. He did defer to Senegal the driver's consent to look at the gas gauge. But although the officer testified that my client really seemed to have to go to the bathroom and was dancing around, he stayed behind by the car. And he was there after Senegal left to use the restroom, showing that he was going to protect that unlocked, open car from any other persons. For all he knew, the officer could have walked away and left that unlocked car door wide open standing there. So I do believe that Lionel Martin has exhibited a possessory interest in this car. He's taken precautions to protect this vehicle, somewhat secondary to the driver's, of course, but he has shown an expectation of privacy. And I do believe that this court should find that he has legitimate expectation of privacy and thus standing. Thank you very much. Thank you. Thank you, counsels, for your arguments and briefs today. We'll take them at our advisement.